IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JEFFERY L. BRUNSWICK | Case No. 1:10-cv-617 |
| Plaintiff, | Chief Judge Susan J. Dlott |
| v. | ORDER GRANTING DEFENDANT KATRINA NEAL'S MOTION FOR SUMMARY JUDGMENT |
| CITY OF CINCINNATI, *et al.,* | |
| Defendants. | |

In this action, Plaintiff Jeffery Brunswick, a Cincinnati Police Officer, asserts a claim of malicious prosecution against Defendant Katrina Neal, a fellow Cincinnati Police Officer.[1] Shortly after Brunswick brought suit against her, Neal filed a Motion for Summary Judgment with Supporting Memorandum and Affidavit. (Doc. 7.) Having reviewed the evidence pertinent to Brunswick's claim against Neal, and for the reasons stated below, the Court **GRANTS** Defendant Neal's Motion for Summary Judgment.

**I. BACKGROUND**

Although currently suing her for malicious prosecution, Brunswick was at one time in a romantic relationship with Defendant Neal. (Neal Aff. ¶ 4; Brunswick Aff. ¶ 2.) That relationship began in the fall of 2006. (Neal Aff. ¶ 4; Brunswick Aff. ¶ 2.) In June 2007, the two officers moved in together. (Brunswick Aff. ¶ 2.) They became engaged in March 2008 and made tentative plans to marry in July 2009. (*Id.*) Best laid plans aside, Defendant Neal ended

---

[1] Brunswick also asserts federal civil rights claims against the City of Cincinnati and several members of the Cincinnati Police Division. However, those claims are not the subject of Defendant Katrina Neal's Motion for Summary Judgment.

the relationship on July 2, 2008, and shortly thereafter Brunswick moved out of their shared residence. (*Id.*)

Neal alleged then and continues to maintain in an affidavit filed with this Court that following the termination of her relationship with Brunswick, he continued to contact her through text messages, emails, and phone messages. (Neal Aff. ¶ 6.) She claims that the contact was unwanted and unsolicited and that, in some of the communications, Brunswick used profanity and called her a whore. (*Id.*) Neal also claims that Brunswick disclosed her address, photo, place of employment, and personal and financial information to a third party. (*Id.* ¶ 7.) Brunswick admits that he and Neal continued to communicate via cell phone and text messages following their break-up, but he maintains that none of his calls or messages were in any way threatening or menacing. (Brunswick Aff. ¶ 3.) He also claims that during that period, Neal made several calls to him and sent him several messages that he describes as "friendly." (*Id.*)

In early August 2008, Neal reported Brunswick's alleged unwanted contact to her supervisors. (Neal Aff. ¶ 8.) As a result of her complaint, the Internal Investigation Section (IIS) of the Cincinnati Police Department (CPD) opened an investigation, which was led by Sergeant John Cordova. (*Id.* ¶ 8.) Neal described the unwanted contact to Sergeant Cordova, who then reviewed the evidence, which consisted of several text messages, with Ernest F. McAdams, Jr., the Deputy City Solicitor of the City of Cincinnati's prosecutor's office. (*Id.* ¶ 8; McAdams Aff. ¶¶ 5-6.) Part of McAdams' responsibility as Deputy City Solicitor is to work with IIS Investigators to review evidence gathered during an IIS investigation into an administrative complaint and to provide direction as to whether there is probable cause to pursue

a criminal complaint. (McAdams Aff. ¶ 3.) In this case, McAdams concluded there was probable cause to charge Brunswick with menacing by stalking. (*Id*. ¶ 6.)

On August 15, 2008, Sergeant Cordova instructed Neal to report to IIS for a meeting. (Neal Aff. ¶ 10.) During the meeting, Sergeant Cordova informed Neal that the prosecutor had recommended handling her complaint as a criminal rather than as an administrative matter. (*Id*. ¶ 11.) Sergeant Cordova completed a CPD Incident Report and a CPD Citizen Referral, requesting an arrest warrant for menacing by stalking. (*Id*. ¶¶ 10-11; Docs. 7-5, 7-10.) The CPD Incident Report alleged menacing by stalking and described the "method of operation" as "sent text messages." (Doc. 7-5 at 1.) Neal took these documents to the Clerk of Court's office and filed them along with a criminal complaint and an affidavit. (Neal Aff. ¶ 12; *see also* Docs. 7-4, 7-6.) In the affidavit Neal submitted to the clerk, she attested to the following:

> . . . [O]n or about the 5th day of July 2008 at Cincinnati, Ohio Jeff Brunswick did show up on my radio run with the purpose of causing emotional distress by yelling and cursing. Mr. Brunswick continued to send unwanted text messages as well as attempting to make contact with my son without my knowledge and giving my personal information to a third party also with the intent of causing emotional distress. Mr. Brunswick also followed my roommate from his work toward my house and began yelling at him on the highway.

(Doc. 7-4.)

Based on the documents submitted by Neal, the clerk issued a warrant for Brunswick's arrest. (Neal Aff. ¶ 12; Doc. 7-8 and attachments).[2] Brunswick turned himself into the Internal Affairs Office at CPD after learning of the charge against him. (Brunswick Aff. ¶ 5.) He was incarcerated for twelve hours before being released on a $1,000 bond. (*Id*.)

---

[2] Neal also filed for a protective order, but that request was denied. (Neal Aff. ¶ 12; Brunswick Aff. ¶ 4.)

3

The prosecutor's office assigned Niroshan Wijesooriya to the case.  (Neal Aff. ¶ 13; Wijesooriya Aff. ¶¶ 2-3.)  He, like McAdams, had an ethical responsibility not to pursue prosecution unless he believed the case to be supported by probable cause.  (Wijesooriya Aff. ¶ 4; McAdams Aff. ¶ 4.)  While preparing his case, Wijesooriya met with Neal several times and reviewed all of the documentary evidence, including the text messages and emails sent by Brunswick.  (Wijesooriya Aff. ¶ 5; Neal Aff. ¶ 13.)  He also met with other witnesses and reviewed their testimony.  (Wijesooriya Aff. ¶ 5.)  After carefully considering all the evidence, Wijesooriya concluded that the charge was supported by probable cause and that the prosecution should continue.  (*Id*. ¶ 6.)

Prior to trial, Brunswick did not move to suppress any evidence.  Nor did he make any motion to dismiss on the basis that the criminal charge lacked probable cause.  (Wijesooriya Aff. ¶ 7.)  On February 9, 2009, the case proceeded to trial before Judge Heather Russell.  (*Id*. ¶¶ 3, 8-9; Neal Aff. ¶¶ 14-15.)  The trial lasted approximately one and a half weeks.  (Neal Aff. ¶ 14.)  The prosecution called several witnesses, including Neal, Sergeant Cordova, and other Cincinnati police officers. (*Id*. ¶ 14.)  At the close of the prosecution's case on February 19, 2009, Brunswick moved for dismissal pursuant to Ohio Rule of Criminal Procedure 29 ("Rule 29 motion").  (*Id*. ¶ 15; Wijesooriya Aff. ¶ 8; Doc. 7-7.)  Judge Russell denied Brunswick's Rule 29 motion and submitted the case to the jury, who acquitted Brunswick of the criminal menacing charge.  (Neal Aff. ¶ 15; Wijesooriya Aff. ¶ 9; Brunswick Aff. ¶ 7; Doc. 7-7.)

Brunswick subsequently filed a civil action alleging one claim of malicious prosecution against Neal in state court.   Neal filed a motion for summary judgment.  Before filing a response to her motion, Brunswick dismissed the case without prejudice.  He then refiled the case, adding

additional claims against newly named defendants, and those Defendants removed the case to federal court.

In the current case, Brunswick again asserts one claim of malicious prosecution against Neal. He maintains that he committed no crime and "had done nothing that would lead any reasonable person to believe that [he] had committed a crime." (Brunswick Aff. ¶ 8.) In the affidavit he submitted in response to Neal's Motion for Summary Judgment, Brunswick states that his criminal trial centered around the following three allegations:

(a) That on July 5, 2008, Brunswick had responded to a radio run where Neal was also responding on Whittier Avenue in Cincinnati, and that Brunswick did so to harass her, intimidate her and cause her emotional distress;

(b) That Brunswick had attempted to contact Neal's minor son (age 8 at the time) while he was spending time with other children at Camp Joy in Warren County, Ohio, and that Neal believed that Brunswick was a threat to harm her son[sic];

(c) That Brunswick had repeatedly sent Neal unwanted text messages.

(*Id*. ¶ 6.) Brunswick maintains that all three allegations were false and that Neal "had to know they were false." (*Id*. ¶ 8.) As to the three allegations made during the course of his trial, Brunswick claims the following:

(a) As to the allegations in 6(a) above, Neal has fabricated or greatly exaggerated the events on July 5, 2008. I did speak with Neal on Whitter Avenue, but we were still living together at the time and we went home together that day. Not only did we go to a social function together later that evening, but the next day Neal sent me several text messages asking me to take off work early so that we could to go to dinner together;

(b) As to the allegations in 6(b) above, Neal completely fabricated the idea that I attempted to contact her son or was a threat to her son. I had made no attempt to contact her minor son while he was at Camp Joy nor did I ever do anything that could have been construed as a threat to him. I was always kind to Neal's son and I had a good relationship with him;

5

    (c)    As to the allegations in 6(c) above, it is false that I sent Neal "unwanted" text messages. Neal and I often communicated by text message, and she never once told me to stop sending her text messages or to stop any other form of personal contact. In fact, I continued texting her after we broke our engagement and while I still had a desire to get back together with her. I once stated specifically to her in a text message that if ever I was being a "pain in the ass" she should tell me and I would stop texting her. Even after that message she never asked me to stop texting her.

(*Id.* ¶ 8.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). That is, the nonmoving party must present sufficient evidence to permit a reasonable jury to find in that party's favor. *Id.*

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. The Court's task is not "to weigh

the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

### III.     ANALYSIS

"The tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions." *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 84, 564 N.E.2d 440, 443 (Ohio 1990). To prevail on such a claim, the plaintiff must prove the following elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Id*.

Defendant Neal moves for summary judgment on the basis that Brunswick cannot prove malice or the absence of probable cause. In the context of a malicious prosecution claim, the term "malice" means "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Id*. at 85, 564 N.E.2d at 443. Where there appears to have been no basis for the prosecution, those who made the decision to prosecute may be considered to have acted maliciously. *Id*. In other words, malice may be inferred from the absence of probable cause, making "probable cause . . . the gist of an action for malicious prosecution." *Melanowski v. Judy*, 102 Ohio St. 153, 131 N.E. 360, paragraph one of the syllabus (1921)*; see also Schweller v. Schweller*, Nos. C-970183, C-970191, 1997 WL 793106, at *3 (Ohio Ct. App. Dec. 26, 1997). With regard to a malicious-prosecution claim, the defendant undertakes a criminal prosecution without probable cause if she institutes or continues the prosecution without "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense

7

with which he is charged." *Huber v. O'Neill*, 66 Ohio St. 2d 28, 30, 419 N.E.2d 10, 12 (Ohio 1981) (internal quotation marks omitted). "While the issue of probable cause is ordinarily one for the jury, the court must decide whether the evidence is such that reasonable minds can only come to but one conclusion." *Dillon v. Waller*, No. 95APE05-622, 1995 WL 765224, at *4 (Ohio Ct. App. Dec. 26, 1995); *see also McFinley v. Bethesda Oak Hosp.*, 79 Ohio App. 3d 613, 617, 607 N.E.2d 936, 939 (Ohio Ct. App. 1992) (finding, with regard to a malicious prosecution claim, that "in an appropriate case it may be determined as a matter of law when the evidence provided in the record allows for only one reasonable conclusion"); *Runyon v. Columbus S. Power Co.*, No. 94APE11-1656, 1995 WL 390784, at *3 (Ohio Ct. App. June 27, 1995) (same).

In this case, the parties provided only a description of the evidence reviewed by the officers and the prosecutors in the underlying case. The evidence before this Court consists of the parties' competing affidavits, the affidavits of two members of the City prosecutor's office, a number of official documents relating to the underlying criminal case such as the criminal complaint, and a brief excerpt of the transcript of Brunswick's trial. The Court therefore does not have the benefit of reviewing the actual evidence relied upon in pursuing charges against Brunswick, such as the text messages, to determine whether it established probable cause as a matter of law. Instead, the Court is left with a "he-said, she-said" scenario. Brunswick claims that Neal's allegations against Brunswick were false. Neal maintains that they were not.

Neal argues that she is nonetheless entitled to summary judgment because two prosecutors reviewed the evidence against Brunswick and concluded that prosecution was warranted, thus insulating Neal from civil liability, and because Judge Russell denied Brunswick's Rule 29 motion for acquittal, thus proving the existence of probable cause.

Defendant responds that both arguments are without merit because both the prosecutors' decision to pursue criminal charges and Judge Russell's decision to deny Brunswick's Rule 29 motion were based on false information provided by Neal.

### A. Effect of Rule 29 Decision

The standard for demonstrating probable cause is a lesser burden than the standard for surviving a Rule 29 motion for acquittal. *See State v. Bassham*, No. 2000 CA 29, 2000 WL 896238, at *3 (Ohio Ct. App. July 7, 2000) (quoting an opinion of the lower court which stated, "The Court has already heard his testimony and did not find the evidence to meet the lesser burden for probable cause, let alone the very high standard of beyond a reasonable doubt. Therefore, it is extremely doubtful that such testimony would survive a Rule 29 motion at trial.") (reversed on other grounds). Therefore, the denial of a Rule 29 motion may be viewed as a determination that the evidence is at least sufficient to demonstrate probable cause. *See Dowers v. Krause*, No. C-030644, 2004 WL 595639 at *2 (Ohio Ct. App. Mar. 26, 2004) (citing a trial court's overruling of a malicious prosecution claimant's Rule 29 motion in the underlying criminal case as evidence of probable cause); *Lorenzo v. Akron*, No. 21085, 2002 WL 31890098, at *3 (Ohio Ct. App. Dec. 31, 2002) ("The trial court's denial of Lorenzo's [Rule] 29 motion is evidence that there was probable cause for his arrest."). However, such a ruling is not preclusive of a malicious prosecution claim where the plaintiff alleges the underlying Rule 29 decision was based in whole or in part on false information supplied by the defendant. *See Zulock v. Shures*, No. 08–4664, 2010 WL 6501311, at *9 (6th Cir. Dec. 22, 2010) ("When a plaintiff claims (and offers evidence suggesting) that an earlier probable cause determination was made on the basis

of false information provided by a police officer, the plaintiff is no longer litigating the same fact or issue, and so does not trigger collateral estoppel.")

Therefore, in this case, Judge Russell's denial of Brunswick's Rule 29 motion does not amount to conclusive proof of the existence of probable cause. *See Schweller v. Schweller*, Nos. C-970183, C-970191, 1997 WL 793106, at *4 (Ohio Ct. App. Dec. 26, 1997) ("The fact that a trial court overruled a [Rule] 29 motion is not in and of itself determinative of the issue of probable cause in a malicious-prosecution action.").

> **B.** **Effect of the Prosecutors' Independent Determination to Pursue Prosecution**

Although the Rule 29 decision is not dispositive, there are two other bases on which Plaintiff Neal is entitled to summary judgment. The first, discussed herein, is that at least one prosecutor conducted an independent review of the text messages sent by Brunswick and determined that there was probable cause to support the criminal charges. The second basis, discussed below, is that under Ohio law, Neal is immune from civil liability related to the allegations she made against Brunswick.

Several courts in Ohio have found that when an individual provides information to a public official or prosecutor regarding another's criminal misconduct, and the decision to pursue a criminal charge is left to the official's uncontrolled discretion, the individual providing the information cannot be said to have initiated the prosecution and therefore cannot be liable for malicious prosecution. *See Donohoe v. Burd*, 722 F. Supp. 1507, 1519 (S.D. Ohio 1989) (citing *Archer v. Cachat*, 165 Ohio St. 286, 135 N.E.2d 404 (1956)) ("A private person giving information to a public official or prosecutor of which that official is ignorant, in the malicious prosecution context, does not cause the initiation of the proceedings if it is left to the official's

uncontrolled discretion to initiate the prosecution."); *Fuhrmann v. Kitchen*, No. CA91-10-019, 1992 WL 156117, at *2 (Ohio Ct. App. June 29, 1992) (same as *Donohoe*); *Robbins v. Fry*, 72 Ohio App. 3d 360, 362, 594 N.E.2d 700, 701-02 (Ohio Ct. App. 1991) ("[A] citizen who serves only as an informer of criminal activity is not regarded as having instituted the criminal proceedings."). Those courts also recognize an exception to that rule in situations where the person informing the officials of another's criminal behavior provides knowingly false information:

> If . . . the information is known by the private person to be false, an intelligent exercise of the prosecutor's discretion becomes impossible. The private person is responsible for the initiation of criminal proceedings if his expressed direction, request or pressure of any kind was the determining factor in the prosecutor's decision to commence the prosecution or the information furnished by him upon which the prosecutor acted was known to the private person to be false.

*Donohoe*, 722 F. Supp. at 1519-20.

Brunswick argues that this exception precludes summary judgment in the instant case, where there remain questions of fact as to whether the information provided by Neal was completely truthful. During the course of the investigation and subsequent prosecution of Brunswick, Neal made four main allegations against Brunswick:

(1)     Unwanted and Harassing Communications: Neal alleged that following their break-up, Brunswick continued to contact her through text messages, emails, and phone messages. She further stated that the contact was unwanted and unsolicited and that, in some of the communications, Brunswick used profanity and called her a whore.

(2)     Disclosure of Personal Information:  Neal alleged that Brunswick disclosed her address, photo, place of employment, and personal and financial information to a third party.

11

(3) Incident of Harassment During Work: Neal alleged that on July 5, 2008, Brunswick responded to a radio run where Neal was also responding, and that Brunswick did so to harass her, intimidate her and cause her emotional distress;

(4) Attempts to Contact Neal's Son: Neal alleged that Brunswick attempted to contact Neal's minor son while he was at camp, and that she believed Brunswick posed a threat to her son.

Brunswick does not dispute the second allegation. He disputes the first allegation, but only insofar as relates to his characterization of the communications rather than the occurrence of the communications. Specifically, Brunswick does not deny making those communications. Nor does he deny using profanity or calling Neal a whore. Instead, he claims that his communications were not threatening, were friendly, and were not unwanted. He provides no evidence other than his own self-serving characterizations of the communications to dispute Neal's allegations.

The third and fourth allegations appear to be pure "he-said, she-said," with Neal alleging that certain events occurred, and Brunswick denying Neal's allegations. Unlike the alleged unwanted communications, of which Neal was able to provide the prosecutors with physical evidence, there does not appear to have been any corroborating evidence of Brunswick's alleged harassment of Neal during the radio run at work or of his alleged attempt's to contact Neal's son. As to the alleged incident of harassment during work, Brunswick claims Neal fabricated or exaggerated the event.[3] He does not deny responding to the radio run. However, he claims that

---

[3] Neither Brunswick nor Neal described what actually occurred during the radio run. The extent of the evidence before the court is simply what was described above. Neal alleges that Brunswick harassed her during the radio run, while Brunswick claims he did nothing to harass her.

12

he and Neal were living together at the time, that they went home together that day, and that they went to a social event together that evening. He also claims that Neal asked him to go to dinner with her the next day.[4] As to the fourth allegation, Brunswick denies ever attempting to contact Neal's son while he was at camp.

Ordinarily, this Court might agree with Brunswick and find that the questions of fact as to the third and fourth allegations warrant denial of summary judgment. However, in this case, there little to no evidence that those allegations actually persuaded the two prosecutors, McAdams and Wijesooriya, who reviewed the evidence to seek criminal charges. According to the evidence before this Court, when Neal first complained about Brunswick's conduct to CPD IIS, she described only the unwanted communications. (*See* Neal Aff. ¶ 9.) The IIS investigator relayed that information to Deputy City Solicitor McAdams. McAdams reviewed the evidence, which at that time "consisted of several unwanted text messages received from Mr. Brunswick" and concluded that there was probable cause to charge Brunswick with criminal menacing by stalking. (McAdams Aff. ¶ 6.) There is no evidence that McAdams' conclusion related to anything other than the text messages, and Brunswick does not claim that those messages were fake or that he did not actually send them.

The third and fourth allegations first appear in an affidavit that Neal drafted after McAdams decided to pursue the criminal charge against Brunswick. (*See* Doc. 7-4.) Wijesooriya, the second prosecutor to review the information, presumably considered that affidavit when preparing the case against Brunswick, but he makes no mention of those

---

[4] The mere fact that Neal continued to live together and spend time with each other for a short time following their break-up does not foreclose the possibility that Brunswick also at the same time was harassing her and attempting to intimidate her.

allegations in his affidavit. Rather, he states only that he met with Neal and several other witnesses to review their testimony and that he reviewed all of the documentary evidence. There is no evidence before this Court regarding the extent to which the alleged harassment during the radio run and the allegation that Brunswick attempted to contact Neal's son factored into Wijesooriya's decision to continue with the prosecution of Brunswick. However, the fact that McAdams determined, based simply on a review of the text messages, that probable cause existed to press a criminal charge against Brunswick suggests that if any of the information that Neal provided to Wijesooriya was false or exaggerated, that information was immaterial to a finding a probable cause.

Regardless of what ultimately factored into Wijesooriya's decision, the undisputed evidence before this Court shows that at least one prosecutor, McAdams, concluded based on the text messages alone that there was probable cause to support a charge of criminal menacing by stalking. It was not Neal's decision to initiate a criminal case against Brunswick, but rather McAdams' decision. Neal did nothing more than report to her supervisors that one of her colleagues was allegedly harassing her. The Court therefore finds that Neal did not initiate criminal proceedings against Brunswick and cannot be held liable for malicious prosecution. *See Scarso v. Village of Mayfield*, No. 75269, 1999 WL 1044512, at *4 (Ohio Ct. App. Nov. 18, 1999) (affirming a grant of summary judgment to defendant as to plaintiff's malicious prosecution claim where there was "no evidence, other than appellant's own self-serving accusations, to suggest that the indictment resulted from perjured testimony."); *Fuhrmann*, No. CA91-10-019, 1992 WL 156117, at *2 (finding that where the defendant, whose accusations that the plaintiff had harassed her led an official to file a complaint against the plaintiff for criminal

trespass, did not actually initiate the criminal proceedings, the defendant was entitled to summary judgment as to the plaintiff's malicious prosecution claim and "the factual issues regarding whether [the defendant] had probable cause to file her statement of the events [forming the basis of the criminal trespass charge] . . . [were] not material to the disposition of [the] case").

### C. Immunity Under Ohio Law

Even if this Court had determined that there were material issues of fact as to whether Neal maliciously initiated or continued the prosecution of Brunswick, the Court nevertheless would grant summary judgment to Neal on the basis that, under Ohio law, she is entitled to immunity from civil liability related to all statements she made reporting the commission of a crime.

The Supreme Court of Ohio has recognized an absolute privilege or "immunity" for statements made in a judicial proceeding. *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 505-06, 634 N.E.2d 203, 209 (Ohio 1994). That privilege extends to every step in the proceeding, from beginning to end. *Id.* An informal complaint to a prosecuting attorney is regarded as an initial step in a judicial proceeding, and entitled to absolute immunity:

> An affidavit, statement or other information given to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relationship to the activity reported.

*Id.* at syllabus, 69 Ohio St. 3d at 506, 634 N.E.2d at 209-10; *see also Bacon v. Kirk*, 2000 WL 1648925, at *19 (Ohio Ct. App. Oct. 31, 2000) (applying the *M.J. DiCorpo* immunity analysis to a malicious prosecution claim); *Fair v. Litel Commc'n, Inc.*, No. 97APE06-804, 1998 WL

107350, at *5-6 (Ohio Ct. App. Mar. 12, 1998) (same); *Haller v. Borror*, No. 95APE01-16, 1995 WL 479424, at *2 (Ohio Ct. App. Aug. 8, 1995) (same). The privilege is so broad that it covers all statements regardless of the truth or falsity of the information conveyed:

> Even false statements made to a prosecutor are immune from liability on a malicious prosecution claim so long as that information bears some reasonable relation to the alleged activity reported. A witness is also immune from civil liability for giving false testimony. Further, the mere fact that the prosecution of the plaintiff is a foreseeable result of defendant's remarks to other citizens is not enough to justify liability.

*Bacon*, 2000 WL 1648925, at *19 (internal citations and quotation marks omitted).

The statements that Neal made to the investigating officer in this case and to the two prosecutors were made during the course of judicial proceedings and undoubtedly bore some reasonable relation to Brunswick's alleged continued harassment of her.[5] Accordingly, Neal is

---

[5] The Court recognizes that there is some dispute amongst Ohio courts as to whether the holding of *M.J. DiCorpo* extends to statements made to police officers as opposed to prosecutors. Compare *Fair*, 1998 WL 107350, at *5-6 (holding that the defendants could not be held liable under a malicious prosecution claim arising from statements made to a *detective* and a prosecutor during the course of an investigation into the plaintiff), with *Scott v. Patterson*, No. 81872, 2003 WL 21469363, at *3 (Ohio Ct. App. June 26, 2003) (holding that where officers responded to the scene of an assault, in which the defendant had punched the plaintiff in the face, and the Defendant told the officers that the plaintiff had caused the assault, the defendant's statements were not shielded by *M.J. DiCorpo* because the statements were made during the course of initial police work rather than as part of a judicial proceeding). Recently this year, in a case filed in the Southern District of Ohio involving Ohio law claims of defamation, slander, and filing a false police report, Judge Watson addressed the apparent conflict amongst Ohio appellate courts on this matter, and ultimately concluded that he believed "the Supreme Court of Ohio would not consider statements made to the police part of a judicial proceeding" and therefore would not extend absolute immunity to statements made to the police." *Dehlendorf v. City of Gahanna, Ohio*, No. 2:10-cv-263, 2011 WL 1233464, at *8 (S.D. Ohio Mar. 28, 2011). As Judge Watson recognized, the question of whether statements to police officers are entitled to the same absolute immunity afforded to statements made to prosecutors remains unsettled. This Court finds that in the context of this case, Neal is entitled to absolute immunity regardless of the fact that Neal initially reported her concerns to an investigator rather than to a prosecutor. The investigator in this case immediately relayed Neal's allegations to McAdams, and it was McAdams who made the decision to file criminal charges, not Neal or the investigator. This Court finds no material difference between the nature of the statements Neal

16

entitled to absolute immunity and is entitled to summary judgment with regard to Brunswick's malicious prosecution claim.

IV. **CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant Neal's Motion for Summary Judgment.

IT IS SO ORDERED.

                                                    s/Susan J. Dlott
                                                    Chief Judge Susan J. Dlott
                                                    United States District Court

---

made to the investigator in this case and the type of statements described by the *M.J. DiCorpo* Court, specifically "an informal complaint to a prosecuting attorney," as being shielded by absolute immunity. *See M.J. DiCorpo*, 69 Ohio St. 3d at 506, 634 N.E.2d at 210. The level of immunity afforded to complainants in cases such as this should not turn on whether they decide to go straight to a prosecutor or to talk to a police officer first.